IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NICOLETTE HENDRICKS, WILLIAM
HENDRICKS, ORGANIZATIONAL
STRATEGIES, INC., INTEGRATION
CASUALTY CORP., SYSTEMS CASUALTY
CORP., AND OPTIMAL CASUALTY CORP.,

    Plaintiffs;

v.

THE FELDMAN LAW FIRM LLP, STEWART
A. FELDMAN, CAPSTONE ASSOCIATED
SERVICES (WYOMING) LP, CAPSTONE
ASSOCIATED SERVICES LTD., AND
CAPSTONE INSURANCE MANAGEMENT,
LTD.,

    Defendants.

Civil Action No. 14-826-RGA

## MEMORANDUM OPINION

William M. Kelleher, Esq., Neil R. Lapinski, Esq., Phillip A. Giordano, Esq., GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, DE, attorneys for Plaintiffs.

Kelly E. Farnan, Esq., Blake R. Rohrbacher, Esq., Katharine C. Lester, Esq., RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; John R. Craddock, Esq., E. John Gorman, Esq., THE FELDMAN LAW FIRM LLP, Houston, TX, attorneys for Defendants.

September 25, 2015

*signature: Richard G. Andrews*
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court are: (i) Defendants' Motion to Vacate Arbitration Award (D.I. 11); (ii) Plaintiffs' Petition for Confirmation of Arbitration Award (D.I. 1); and (iii) the parties' cross motions for summary judgment with respect to Defendants' demand for injunctive relief (D.I. 49, 57). This case is a related action to *Organizational Strategies, Inc. v. Feldman Law Firm LLP* (C.A. No. 13-764) and is consolidated with *Capstone Associated Services (Wyoming) LP v. Organizational Strategies, Inc.* (C.A. No. 14-648).[1] For the reasons that follow, Defendants' motion to vacate the arbitration award is **GRANTED**. Defendants' motion for summary judgment is **DENIED**. Plaintiffs' motion for summary judgment is **GRANTED**. Plaintiffs' petition to confirm the arbitration award is **DENIED**.

I. **BACKGROUND**

Plaintiff Organizational Strategies, Inc. ("OSI") is a defense contractor owned and operated by Plaintiffs Nicolette and William Hendricks. (D.I. 1 at 1-2). Plaintiffs Integration Casualty Corp., Systems Casualty Corp., and Optimal Casualty Corp. (collectively, the "Captives") are captive insurance companies owned by OSI. (*Id.* at 2). Plaintiffs are collectively referred to herein as the "OSI Parties." Defendant Stewart A. Feldman is the principal of Defendant The Feldman Law Firm LLP (the "Firm"). (D.I. 5 at 2). Defendants Capstone Associated Services (Wyoming) LP, Capstone Associated Services, Ltd., and Capstone Insurance Management, Ltd. (collectively, "Capstone") are related companies that provide turnkey formation and administrative services for captive insurance

---

[1] Citations to the docket in this case do not include the case number. Citations to the docket in the related cases do include the case number.

1

companies. (D.I. 1-1 at 19). Defendants are collectively referred to herein as the "Capstone Parties." PoolRe Insurance Corp. ("PoolRe"), not a party to this action, is a third-party insurer that provides insurance-pooling services and is administered by Capstone. (D.I. 51-6 at 308, 309).

This case arises out of an agreement between OSI and the Capstone Parties to set up and run the Captives on behalf of OSI.[2] (D.I. 1-1). Although PoolRe was not a party to the agreement between OSI and the Capstone Parties, the Capstone Parties arranged for the Captives to participate in a risk pool run by PoolRe as part of OSI's captive insurance program. (D.I. 51-6 at 308). Shortly after the Captives were formed, OSI came to believe it was overpaying insurance premiums to them. (D.I. 50 at 10; D.I. 66 at 6). The OSI Parties asked the Capstone Parties to adjust the premiums. (D.I. 50 at 10; D.I. 66 at 6). The Capstone Parties refused. (D.I. 50 at 10; D.I. 66 at 6). The OSI Parties stopped paying the full amount of the prescribed premiums. (D.I. 50 at 10-11). Because full payment of premiums was a condition of inclusion in the PoolRe risk pool, the Captives were excluded in 2012. (*Id.* at 11). The parties failed to resolve their differences and OSI terminated the agreement. (D.I. 50 at 11; D.I. 66 at 6). A dispute arose over whether PoolRe was required to reimburse the premiums that the Captives had paid for inclusion in the PoolRe risk pool in 2012. (D.I. 50 at 11).

The agreements between the OSI and Capstone Parties provided that most disputes must be arbitrated pursuant to the Commercial Arbitration Rules of the American Arbitration

---

[2] The history of this dispute is extensive; only those portions necessary for this Opinion are summarized here.

2

Association. (D.I. 1-1 at 15-16; C.A. No. 13-764 D.I. 50 at 6). The Capstone Parties filed an arbitration demand in Houston against the OSI Parties alleging breach of contract (the "Texas Arbitration"). (C.A. No. 13-764 D.I. 6-1 at 72). Because the OSI Parties did not believe that the parties had agreed to arbitrate, they filed a complaint in the Delaware Court of Chancery alleging breach of contract, professional malpractice, and breach of fiduciary duties. (C.A. No. 13-764 D.I. 1-1). The Capstone Parties removed the Chancery case to this Court. (C.A. No. 13-764 D.I. 1). The OSI Parties filed a motion for a temporary restraining order to stop the Texas Arbitration, which I denied. (C.A. No. 13-764 D.I. 14, 18). The Texas Arbitration culminated in an award purporting to bind the OSI Parties, the Capstone Parties, and PoolRe. (C.A. No. 14-648 D.I. 1-1 at 7-14). The Capstone Parties and PoolRe sought to confirm the Texas Arbitration award in the District Court for the Southern District of Texas, while the OSI Parties sought to vacate it. *See PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 2014 WL 1320188, at *1 (S.D. Tex. Mar. 31, 2014), *aff'd*, 783 F.3d 256 (5th Cir. 2015). The Texas District Court vacated the Texas Arbitration award, *id.*, and the Fifth Circuit affirmed, 783 F.3d at 259.

In this Court, meanwhile, the Capstone Parties filed a motion to dismiss for lack of subject matter jurisdiction because the parties had a valid arbitration agreement. (C.A. No. 13-764 D.I. 24). I granted the Capstone Parties' motion to dismiss and granted a motion by OSI and the Captives to compel arbitration, holding that the parties' agreement required that the arbitration be conducted by a Delaware arbitrator. (C.A. No. 13-764 D.I. 51, 77, 78). The same day that I held that the parties' agreements required that they arbitrate, the OSI Parties notified the Capstone Parties of their demand for arbitration by Delaware lawyer

3

James S. Green, Sr. (the "Delaware Arbitrator"). (C.A. No. 13-764 D.I. 50 at 6; D.I. 60 at 58). The Capstone Parties appealed this Court's order compelling arbitration in Delaware. (C.A. No. 13-764 D.I. 59). The Third Circuit affirmed. *Organizational Strategies, Inc. v. Feldman Law Firm LLP*, 604 F. App'x 116, 117 (3d Cir. 2015).

Before the Delaware arbitration hearing, the Capstone Parties filed a new action seeking to determine whether their rights under the agreement would be violated if they were required to arbitrate twice and seeking an injunction to prevent the Delaware arbitration. (C.A. No. 14-648 D.I. 1). The Capstone Parties then filed a motion for a temporary restraining order ("TRO") and a preliminary injunction in that case. (C.A. No. 14-648 D.I. 3). I enjoined the parties from proceeding with any arbitration until oral argument was held. (C.A. No. 14-648 D.I. 13). Following oral argument, I vacated the TRO and denied the Capstone Parties' motion for a preliminary injunction. (C.A. No. 14-648 D.I. 20).

With all obstacles removed, the Delaware arbitration took place and the Delaware Arbitrator issued an award (the "Award"). (D.I. 61 at 42). The Award stated that

> OSI is entitled to reimbursement . . . for premiums paid to PoolRe in 2012 plus interest . . . . Because PoolRe is not a party to these proceedings, but, according to the testimony, is represented by the Firm, and administered by Capstone. Pursuant to the equitable powers vested in the Arbitrator, the Firm and Capstone are ordered to arrange for the payment as aforesaid from PoolRe to OSI . . . .

(*Id.* at 69). The Award did not otherwise grant relief to either party. (*Id.*).

The OSI and Capstone Parties then filed, in this action, a petition to confirm the Award and a motion to vacate the Award, respectively. (D.I. 1, 11). The Court consolidated *Capstone Associated Services (Wyoming) LP v. Organizational Strategies, Inc.* (C.A. No. 14-648) with this action. (D.I. 14). Thus, the issues to be resolved in this case include the

4

confirmation or vacatur of the Award and the parties' cross motions for summary judgment with respect to the Capstone Parties' action for injunctive relief to prohibit the OSI Parties from initiating arbitration.

## II.   LEGAL STANDARDS

### A. Vacatur or Confirmation of the Arbitration Award

The Federal Arbitration Act authorizes a district court to confirm an arbitration award where the arbitration agreement specifies a court in which confirmation proceedings shall be held or, in the absence of such a provision, in the district where the award was made. 9 U.S.C. § 9; *Isidor Paiewonsky Assocs., Inc. v. Sharp Prop. Inc.*, 998 F.2d 145, 154 n.11 (3d Cir. 1993). "[M]indful of the strong federal policy in favor of commercial arbitration," courts considering motions to confirm or vacate an arbitration award "begin with the presumption that the award is enforceable." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd*, 133 S. Ct. 2064 (2013). A federal court will vacate an arbitration award "only under [the] exceedingly narrow circumstances" enumerated in § 10 of the Federal Arbitration Act ("FAA"). *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (alteration in original) (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)); *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). The grounds for vacatur under § 10 are:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

5

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

### B. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the

opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247-49. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

## III. ANALYSIS

### A. Vacatur or Confirmation of the Arbitration Award

The Capstone Parties argue, *inter alia*, that the Court should vacate the Award because the Delaware Arbitrator exceeded his powers by awarding relief against PoolRe, a non-party to the arbitration proceedings. (D.I. 50 at 8). The OSI Parties argue in response that the Award does not grant relief against PoolRe because "[n]either the award nor the OSI Parties' petition for confirmation requires PoolRe to do anything." (D.I. 66 at 34).

Because arbitration is a matter of contract, "parties to an arbitration agreement may place limits upon the arbitrator's powers that are enforceable by the courts." *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219 (3d Cir. 2012), *aff'd*, 133 S. Ct. 2064 (2013). An award may be vacated where the arbitrator exceeded the limits of the power granted to him by the parties.

9 U.S.C. § 10(a)(4). Arbitrators exceed their powers when they determine the rights and obligations of non-parties to an arbitration. *Bevan v. DaVITA, Inc.*, 557 F. App'x 706, 710 (10th Cir. 2014) (quoting *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003)); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287-88 (9th Cir. 2009); *NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995); *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Pan.*, 312 F.2d 299, 300 (2d Cir. 1963); *see Int'l Bhd. of Elec. Workers, Local No. 265 v. O.K. Elec. Co.*, 793 F.2d 214, 216 (8th Cir. 1986) (per curiam). "To the extent that the arbitration award vests any rights in [a non-party], or creates any obligation to [a non-party], it is in manifest disregard for the legal principle that an arbitration panel may not assert jurisdiction over non-parties to the arbitration." *Nationwide*, 330 F.3d at 847.

The Capstone and OSI Parties agree that PoolRe was not a named party to the arbitration. (D.I. 1-1 at 46; D.I. 50 at 15; D.I. 66 at 34). It is similarly undisputed that PoolRe did not participate in the arbitration or voluntarily submit itself to the arbitrator's jurisdiction by, for example, seeking to intervene in the arbitration. (D.I. 50 at 15; D.I. 66 at 34); *see Quaker Securities, Inc. v. Mid-Atlantic Securities, Inc.*, 1996 WL 524094, at *1, *4 (E.D. Pa. Sept. 11, 1996), *aff'd*, 116 F.3d 469 (3d Cir. 1997) (mem.).

The Capstone Parties argue that the portion of the Award directing them "to arrange for the payment" from PoolRe to OSI creates an obligation in PoolRe to make the payment. (D.I. 50 at 15; D.I. 61 at 69). The OSI Parties respond that the Award should not be interpreted to grant relief against PoolRe, emphasizing that the Delaware Arbitrator "was careful in crafting his award to only grant relief against the Capstone Parties." (D.I. 66 at

8

34). The OSI Parties' interpretation is that, far from obligating PoolRe to make a payment to them, the Award "only requires that the Capstone Parties do what they already admitted they once did, and are thus capable of doing again," namely, exercise their managerial control over PoolRe. (*Id.*).

Notwithstanding the Delaware Arbitrator's limited grant of relief, it is clear that the essence of the ordered payment depends on PoolRe. First, the Delaware Arbitrator's post-hearing memorandum suggests that the purpose of the Award was to induce PoolRe to make the ordered payment: "As to the 2012 PoolRe premiums, they belong to OSI, and OSI should receive them." (D.I. 61 at 65). Second, in characterizing the payment as a "reimbursement," the Award demonstrates that the source of OSI's right to the ordered payment is its previous payment to PoolRe. (*Id.* at 69).

The parties dispute whether the Capstone Parties in fact have the power or authority to "arrange for" a payment from PoolRe. (D.I. 50 at 18; D.I. 66 at 34). Whether Capstone could, as a practical matter, arrange for the payment from PoolRe has no bearing on whether the Delaware Arbitrator exceeded his authority by ordering Capstone to do so. Courts disregard the formal structures of business organizations only in extremely narrow circumstances and to address significant public policy concerns; an action for confirmation or vacatur of an arbitration award "is not the proper time for a District Court to 'pierce the corporate veil.'" *Orion Shipping & Trading Co.*, 312 F.2d at 301. An arbitrator exceeds his powers by granting relief to or against a non-party even where, for example, "[i]t may well be" that the party to the arbitration is "merely a 'shell'" that is "thoroughly dominated" by the non-party sought to be bound, *id.*, or where the non-party assumed a party's rights under the

9

contract at issue in the arbitration, *Nationwide*, 330 F.3d at 847. Similarly, an arbitrator exceeds his powers when he indirectly imposes an obligation on a non-party by ordering a party to exercise its control over the non-party. Thus, the Delaware Arbitrator exceeded his authority by ordering Capstone to arrange for payment by PoolRe, regardless of whether Capstone had the power to arrange it.

The existence of the pending arbitration between the OSI Parties and PoolRe before the International Chamber of Commerce ("ICC") further supports vacatur of the Award here because it creates a possibility that either Capstone or PoolRe will be subject to inconsistent obligations. The ICC could determine that PoolRe is not obligated to reimburse the OSI Parties for the 2012 premiums. Such a determination would be inconsistent with the Award even if, as the OSI Parties argue, the Award does not require PoolRe to do anything. In that case, the Capstone Parties would be obligated by the Award to "arrange for" reimbursement by PoolRe in spite of an ICC opinion that PoolRe is not liable to reimburse the premiums.

The Award imposes, albeit indirectly, an obligation on PoolRe, a non-party to the arbitration. Thus, the Award is in excess of the arbitrator's authority and subject to vacatur pursuant to 9 U.S.C. § 10(a)(4).[3]

### B. Summary Judgment

The Capstone Parties argue that, as a matter of law, the OSI Parties' undisputed conduct constituted a waiver of their contractual right to initiate arbitration. (D.I. 50 at 32-

---

[3] I express no opinion on the other issues the Capstone Parties raise in support of their vacatur argument.

10

39). The OSI Parties in turn argue that, as a matter of law, their conduct does not constitute waiver of their right to initiate arbitration. (D.I. 66 at 35-39).

When a party demands arbitration long after litigation is commenced, "prejudice is the touchstone for determining whether the right to arbitrate has been waived." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992). In *Hoxworth*, the Third Circuit identified six "nonexclusive" factors the Court should consider:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Hoxworth*, 980 F.2d at 926-27).

Principally for the reasons I discussed in denying the Capstone Parties' motion for a preliminary injunction (C.A. No. 14-648 D.I. 29 at 64-70), the OSI Parties' prior litigation conduct did not constitute waiver under the *Hoxworth* factors. The first *Hoxworth* factor favors waiver here: the OSI Parties' demand for arbitration was not timely because they did not make it until nearly a year after Capstone and the Firm initiated arbitration of this dispute in Texas. The second factor does not favor waiver because, with the exception of the complaint filed in *Organizational Strategies, Inc. v. Feldman Law Firm LLP* (C.A. No. 13-764 D.I. 1), OSI has not raised during litigation the merits of the parties' dispute. The third factor does not favor waiver because the OSI Parties informed the Capstone Parties of their intent to pursue arbitration on the same day that I held that the integrated agreement requires

11

the parties to arbitrate. (D.I. 60 at 58; C.A. No. 13-764 D.I. 50 at 6). Further, the third factor weighs against waiver because the Capstone Parties did not seek to block the Delaware arbitration until several months after they were aware that the OSI Parties intended to arbitrate. (C.A. No. 14-648 D.I. 1). The fourth and fifth factors do not favor waiver because, although the OSI Parties have engaged in some non-merits motion practice and acquiesced to the District Court's orders,[4] those motions and orders have all related to whether the parties had agreed to arbitrate. Thus, the OSI Parties' motions practice and acquiescence to this Court's orders did not prejudice the Capstone Parties. *Cf. Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 212 (3d Cir. 2010) (holding that, in the context of extensive litigation on the merits of plaintiff's case, its non-merits motion practice and assent to district court orders without objection was behavior inconsistent with an intent to arbitrate that prejudiced defendants). The sixth factor does not favor waiver because, although the parties have engaged in some discovery since I denied the Capstone Parties' motion for preliminary injunction, the discovery has been limited and conducted in the context of consolidated cases to determine arbitration issues rather than the merits of the parties' dispute. (D.I. 10 at 3-4).

That this case is distinguishable in important respects from other cases in which the *Hoxworth* factors have applied further supports that the OSI Parties have not waived their right to invoke arbitration. *Hoxworth* and its progeny involve circumstances in which a party pursued litigation, began losing on the merits, and then invoked arbitration as a way to move

---

[4] The OSI Parties filed a motion for a TRO to stop the Texas Arbitration (C.A. No. 13-764 D.I. 14), a motion to file a sur-reply to Capstone's motions to dismiss the initial case (C.A. No. 13-764 D.I. 35), and a motion to compel arbitration (C.A. No. 13-764 D.I. 54).

the dispute to a potentially more favorable forum. *See, e.g., Supermedia v. Affordable Electric, Inc.*, 565 F. App'x 144, 146 (3d Cir. 2014); *Gray Holdco*, 654 F.3d at 447-51; *Nino*, 609 F.3d at 196-99; *Hoxworth*, 980 F.2d at 914-17. The Capstone Parties argue that the OSI Parties have done essentially that by pursuing litigation while denying that an arbitration agreement existed, and then, when the Court determined that an agreement to arbitrate did exist, seeking arbitration on their terms. (D.I. 50 at 35). This case is distinguishable from other *Hoxworth* waiver cases, however, because "the issue in those cases was whether, in light of the parties' extensive litigation before urging that the case should be arbitrated, waiver has occurred," while "the litigation in this case has always been about the right to arbitration." *Organizational Strategies, Inc. v. Feldman Law Firm LLP*, 604 F. App'x 116, 119 (3d Cir. 2015). Another difference between this case and other *Hoxworth* cases is that here both sides now want arbitration. *Cf. Supermedia*, 565 F. App'x at 146; *Gray Holdco*, 654 F.3d at 450; *Nino*, 609 F.3d at 196; *Hoxworth*, 980 F.2d at 925.

A central principle of the waiver cases is that "a party may not use arbitration to manipulate the legal process and in that process waste scarce judicial resources." *Gray Holdco*, 654 F.3d at 454. Thus, the *Hoxworth* factors typically apply to prevent a party from abandoning merits litigation already in progress and to compel the parties to continue to litigate to a resolution. *Supermedia*, 565 F. App'x at 146; *Gray Holdco*, 654 F.3d at 447-51; *Nino*, 609 F.3d at 196-99; *Hoxworth*, 980 F.2d at 914-17. Here, if I were to accept the Capstone Parties' waiver argument, they would be entitled to an injunction preventing the OSI Parties from initiating arbitration. Such a ruling would bring the parties no closer to a resolution of the merits of their dispute.

"Consistent with the strong preference for arbitration in federal courts, waiver is not to be lightly inferred, and waiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Nino*, 609 F.3d at 208 (internal quotation marks omitted) (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068-69 (3d Cir. 1995)). Considering the strong preference for arbitration, application of the *Hoxworth* factors, and the policies underlying the *Hoxworth* factors, I conclude that, as a matter of law, the OSI Parties did not waive their right to arbitrate by engaging in the litigation in this and related cases in this Court.

### IV. CONCLUSION

For the reasons set forth above, Defendants' motion to vacate the arbitration award is **GRANTED**. Defendants' motion for summary judgment is **DENIED**. Plaintiffs' motion for summary judgment is **GRANTED**. Plaintiffs' petition to confirm the arbitration award is **DENIED**. A separate Order, consistent with this Memorandum Opinion, will be entered.